CITY OF LUBBOCK et al.

v.

James W. GOODWIN.

No. 9134.

Court of Civil Appeals of Texas, Amarillo.

Nov. 26, 1980.

Rehearing Denied Dec. 23, 1980.

John C. Ross, Jr., City Atty., David W. Reagan, Asst. City Atty., Lubbock, for appellants.

Griffith & Brister, Barbara K. Hoffman, Lubbock, for appellee.

COUNTISS, Justice.

This appeal by the City of Lubbock, et al., (hereafter "City") is from a judgment awarding certain benefits to Lieutenant James W. Goodwin, appellee, (hereafter "Goodwin") under the Firemen's and Policemen's Civil Service Act as set out in Tex. Rev.Civ.Stat.Ann. art. 1269m (Vernon 1963). We affirm.

Goodwin was a fireman employed by the City. While fighting a fire on June 4, 1975, he fell from some bales of cotton bagging and injured his left knee. He made a report of the injury in accordance with the regulations of the City of Lubbock Fire Department. Goodwin did not consult a physician at that time because, according to his testimony, he believed he was not seriously injured. Goodwin testified he continued to have pain and swelling in his left knee for several years, but treated it himself with ointment and heat, both on the job and off.

On March 12, 1978, Goodwin's left knee twisted while he was attempting to move a large water heater. It is undisputed that this activity was not within the line of duty. Because of soreness and swelling in the knee, Goodwin did not report to work that afternoon and requested that he be placed on sick leave. He reported for duty two days later but was limping and was instructed by his superior not to return without a doctor's release. Goodwin then saw two doctors who concluded he was totally and permanently disabled from working as a fireman. They found a degenerative arthritic condition in his left knee. Thereafter, Goodwin requested that he be placed on injury leave because his present condition was the result of his 1975 fall. His request was denied, and his employment was terminated after expiration of his sick leave and accrued holidays. Goodwin then brought suit against the City claiming he should have been placed on injury leave rather than sick leave and was entitled to be paid for certain benefits accrued at his termination, including vacation, holiday and sick leave.[1] In a non–jury trial, the court concluded Goodwin was injured in the line of duty and awarded him the benefits he would have received if placed on injury leave, minus certain offsets allowed to the City.

The City brings forward and argues collectively eight points of error. By seven of the points, the City questions the existence or sufficiency of the evidence to support the findings upon which the trial court concluded that Goodwin was injured in the line of duty in 1975 and that the 1975 injury was the cause of the 1978 disability. In the remaining point of error, the City contends that "line of duty" as used in the applicable statute contemplates only injuries incurred wholly on the job and within the scope of employment. We will first consider the legal and factual sufficiency points, then consider the remaining point.

In determining the no evidence points, we are required to consider only the evidence and inferences tending to support the finding under attack and disregard all the evidence and inferences to the contrary. The insufficiency points require that we consider all of the evidence in order to determine whether the evidence supporting the

---

1. During dates pertinent to this case, § 26 of art. 1269m required the City to "provide injury leaves of absence with full pay for periods of time commensurate with the nature of injuries received while in line of duty for at least one (1) year." Tex.Rev.Civ.Stat.Ann. art. 1269m, § 26 (Vernon 1963).

finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

After reviewing the evidence in accordance with the above factual and legal sufficiency standards, we are satisfied there is adequate support for the findings of the trial court. Goodwin testified that his left knee and lower back were injured on May 4, 1975 while he was standing on two stacked bales of cotton bagging fighting a fire. He filed an accident report immediately after the injury and the report was in evidence. After treating the knee with ointment and heat, the swelling and soreness disappeared so that he was able to return to work. Goodwin testified he never saw a doctor concerning the injury because he though it was just a sprain. Thereafter, whenever Goodwin would turn quickly, his knee would again become sore and swollen, and he would treat it at home and at the station with the same remedy. He testified that when he incurred problems with his knee in 1978 while moving the water heater, he again treated his knee with ointment and heat. Goodwin further stated that prior to the 1975 injury he had no trouble with the knee. The testimony of Goodwin was substantiated by his former wife, who stated he had no trouble with his knee prior to 1975, but she had seen it swollen and sore at times thereafter.

Goodwin's physician was asked if he could determine, based on reasonable medical probability, whether the injury which occurred in 1975 was the cause of the degenerative arthritis discovered in his 1978 examination of Goodwin. The doctor's response was:

[W]ell, I would think so, and if we assume that what he is telling us is correct, as I did assume, that he was having no trouble and then he began to have trouble, and looking at the findings and the x-rays I would say this is compatible and goes along with the type of injury that does lead to the changes that we are seeing and the problems that he is hav-

ing. *So, I would say reasonable probability is that it did come from this injury* (emphasis added).

On cross-examination, the doctor stated he felt there was "a strong possibility that this patient [Goodwin] did tear his cartilage when he fell from the cotton bales, and that the continued use of the knee with the cartilage snapping in and out very possibly led to the degeneration." When asked how long a period of time would be required to accomplish the torn cartilage and degree of degeneration present in Goodwin's knee, the doctor stated it usually took several years.

Goodwin's doctor also testified that his diagnosis was "[d]egenerative arthritic changes of the left knee joint compatible with an old injury to the left knee as described by the patient." The doctor, in response to another question asked on cross-examination, stated:

[W]ith my examination, including the arthrogram, the picture all fits together that the injury led probably to a torn cartilage, maybe some damage to the joint surface, and that it had led to the degeneration. So it would appear to have been the older injury that led to it, in my opinion.

Thus, Goodwin presented evidence of the 1975 injury through his testimony and exhibits. The absence of knee problems prior to the 1975 injury, and the presence of problems on a continuing basis thereafter, was in evidence from his testimony and that of his former wife. The causal connection between the 1975 injury and his present disability was established to a reasonable medical probability by the competent opinion testimony of his doctor. Goodwin's evidence drew an unbroken line from his 1975 injury to his 1978 disability. The trial court was entitled to believe that evidence and we are not empowered to abrogate its findings when, as here, they are supported by sufficient evidence. We overrule the City's first, second, third, fourth, fifth, sixth and eighth points of error.

Under its remaining point of error, the City argues that Goodwin's injury was not incurred in the line of duty. The essence of

the argument is that the statute contemplates only injuries received totally within the line of duty and that Goodwin's disability was, at best, the result of two injuries— the 1975 line of duty injury and the 1978 injury outside the line of duty.

As noted above, the computation of the benefits sought by Goodwin is governed by Tex.Rev.Civ.Stat.Ann. art. 1269m, § 26 (Vernon 1963).[2] Under Section 26, the City is required to provide a leave of absence with full pay for up to one year for injuries received "in the line of duty." The statute does not define line of duty, nor have we found any Texas cases doing so. It is apparent, however, that "line of duty" as used in the statute contemplates an injury received by a fireman or policeman while engaged in the performance of the tasks assigned by the employer city. *See City of Houston v. Caldwell*, 582 S.W.2d 494 (Tex. Civ.App.–Beaumont 1979, no writ).

Under the facts of the case, as found by the trial court, we are satisfied Goodwin was injured in the line of duty. As discussed above, the 1975 injury was incurred while fighting a fire. The trial court correctly concluded that the 1975 injury was a "line of duty" injury. The medical testimony indicates that the 1978 "injury" to the knee was in fact a manifestation of the internal condition of the knee in its deteriorated state. It was not an independent injury from an external source.[3] Thus, we are dealing with only one injury, incurred in 1975 in the line of duty, that initiated the conditions leading to the present disability. The City's argument is not applicable to this case under the facts found by the trial court.

Point of error seven is overruled. The judgment of the trial court is affirmed.

**2.** The statute was amended extensively in 1979, but the provisions pertinent to this discussion are not substantially changed. Tex.Rev.Civ. Stat.Ann. art. 1269m, § 26 (Vernon Supp. 1980).

**3.** It is significant that the trial court found the initial injury in 1975, then found: "Thereafter,

for several years, the knee continued to give way both while Plaintiff was on duty and off. *On March 12, 1978, Plaintiff's knee again gave way*" (emphasis added). The trial court did not find a separate injury as a result of the off– duty activities in 1978.